```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
NAVIGATORS INSURANCE COMPANY,                :

                          Plaintiff,         :      OPINION & ORDER

        -v.-                                 :
                                                    20 Civ. 6609 (AKH) (GWG)
GOYARD, INC.,                                :

                          Defendant.         :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Navigators Insurance Company ("Navigators") brings this action against Goyard, Inc. seeking a declaratory judgment that certain losses incurred by Goyard are not within an insurance policy provided by Navigators. Goyard has moved to strike the expert report of Robert V. Comegys.[1] For the following reasons, Goyard's motion is granted.

I. BACKGROUND

On December 16, 2019, Navigators issued a marine cargo insurance policy (the "Policy") to Goyard, with coverage beginning January 1, 2020. See Complaint, filed Aug. 18, 2020 (Docket # 1) ("Comp."), ¶ 7; Answer, filed Nov. 25, 2020 (Docket # 13) ("Answer"), ¶ 7; Ocean Marine Open Cargo Policy, dated Dec. 16, 2019, annexed as Ex. 2 to Benthysen Decl. ("Policy"). The Policy provided Goyard with insurance coverage for goods during shipping and when held in certain specified locations. See Policy at 3. On June 2, 2020, goods held by

---

[1] See Motion to Strike Report of Robert V. Comegys, filed May 3, 2022 (Docket # 69); Memorandum of Law in Support of Motion to Strike, filed May 3, 2022 (Docket # 70) ("Def. Mem."); Declaration of Brett Van Benthysen in Support of Motion to Strike, filed May 3, 2022 (Docket # 71) ("Benthysen Decl."); Memorandum of Law in Opposition to Motion to Strike, filed May 19, 2022 (Docket # 72) ("Pl. Mem."); Declaration of Frank Jordan in Opposition to Motion to Strike, filed May 19, 2022 (Docket # 73); Reply Memorandum in Support of Motion to Strike, filed May 27, 2022 (Docket # 74); Reply Declaration of Brett Van Benthysen, filed May 27, 2022 (Docket # 75).

Goyard were damaged and/or stolen from Goyard's location at 20 East 63rd Street in New York, New York.  See Comp. ¶¶ 8-9; Answer ¶¶ 8-9.  Goyard then submitted a claim under the Policy seeking to recover for losses associated with the damage and theft of its goods.  See Comp. ¶ 9; Answer ¶ 9.

Navigators initiated this action on August 18, 2020, seeking a declaratory judgment that the losses were not covered under the Policy.  See Comp.  Navigators argues that coverage is unavailable as a result of language in the Policy that Navigators claims excepts from coverage losses caused by "Strikes, Riots, and Civil Commotions," or "SR&CC."  See id. ¶¶ 29-35.  Goyard contests this interpretation and has filed counterclaims for (1) declaratory judgment that the Policy covers Goyard's losses in full, and (2) breach of contract.  See Amended Answer, filed Feb. 16, 2021 (Docket # 28), at *13-16.

The parties then engaged in discovery.  On April 14, 2022, Navigators served on Goyard a report prepared for Navigators by expert witness Robert V. Comegys.  See Def. Mem. at 3; Pl. Mem. at 4; Report of Robert V. Comegys, annexed as Ex. 3 to Benthysen Decl. ("Comegys Report").  Comegys's report details his 28 years of experience in the insurance industry and his involvement in "modernizing" the language used in marine insurance policies.  See Comegys Report at 1-2.  Comegys's report opines on the meaning and effect of the various provisions of the Policy as they apply to "[t]he subject claim."  Id. at 3.

More specifically, the report "explains why no claim is payable under the circumstances of this event."  Id.  Comegys states that "[n]o claim is payable under [the Policy] . . . as 'Endorsement No. 4 – Storage Coverage' included in the Policy specifically excludes the perils of 'Risks excluded by the F.C. & S. [Free of Capture and Seizure] and SR & CC [Strikes, Riots and Civil Commotions] warranties contained in the open policy, to which this coverage is

attached.'" Id.  Comegys's report is premised on the largely unexplained conclusion that Goyard's claim involves a loss of merchandise "that was stolen by looters who were participating in riots," id. — a factual issue contested by the parties.  Comegys states his opinion that the Policy's Declarations exclude "[t]he perils of strikes, riots and civil commotions," but that such coverage is "'bought back' by endorsement and for the payment of additional premium." Id. at 4.  Comegys opines that the SR&CC Warranty portion of the Policy contains "the actual wording that excludes [SR&CC] from the Policy," because it "excludes damage caused by riots or acts of any person or persons taking part in such occurrences or disorders." Id. at 5.  This coverage is then "bought back" by Endorsement No. 1 through the payment of additional premium, but only "on a limited basis" — specifically, for "ocean transit and inland transit and NOT to Storage Coverage." Id.  As for Storage Coverage — the portion of the Policy which Comegys states applies to the subject claim — Comegys highlights policy language in Clause 9 of Endorsement No. 4, "Perils Excluded," which provides that

> Notwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached, the following perils are excluded from coverage:
> . . . .
> (E) Risks excluded by the F.C. & S and SR & CC warranties contained in the open policy, to which this coverage is attached.

Id. at 6.  Comegys focuses on the use of the word "[n]otwithstanding" in this clause, stating that "this is a bold word, and its use signifies that despite the fact that there is an SR&CC Endorsement No. 12A in the Policy, coverage under SR&CC will not apply to goods insured under the Storage Coverage Endorsement No. 4." Id.  Comegys states that this exclusion "is standard practice in the United States cargo insurance market, in that coverage for [SR&CC] is only provided while goods are in transit but not while being detained or stored at a warehouse that is named and insured under the Policy." Id.

Comegys concludes that "[t]here is no coverage for loss or damage caused by or resulting from rioting and looting at 20 E. 63rd Street New York, New York." Id.

## II. LEGAL STANDARD

Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 incorporates the principles enunciated in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993), in which the Supreme Court held that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," and in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), in which the Supreme Court held that Daubert's general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge," id. at 141 (citing Fed. R. Evid. 702).

The party seeking admission of expert testimony "has the burden to establish these admissibility requirements, with the district court acting as a 'gatekeeper' to ensure that the 'expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" In re Pfizer Inc. Sec. Litig., 819 F.3d 642, 658 (2d Cir. 2016) (quoting United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007)). "The district court has broad discretion to carry out this gatekeeping function." Id. A court will grant a motion to strike an expert report if the report is inadmissible under Rule 702, whether the motion is presented as a standalone motion to strike or

as part of a summary judgment motion.  See generally Davis v. Carroll, 937 F. Supp. 2d 390, 411 (S.D.N.Y. 2013).

The requirement that expert testimony help the trier of fact is "akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence[, but] . . . goes beyond mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry." In re Rezulin Prod. Liab. Litig., 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004).  As with all testimony, expert testimony not only must be relevant under Fed. R. Evid. 401, see, e.g., Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002), but is also subject to exclusion under Fed. R. Evid. 403 where its probative value is substantially outweighed by the danger of unfair prejudice or other factors, see, e.g., Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005).

Additionally, Rule 702 requires that expert testimony rest on "specialized knowledge," which is more than "subjective belief or unsupported speculation." See Atl. Specialty Ins. v. AE Outfitters Retail Co., 970 F. Supp. 2d 278, 284, 289 (S.D.N.Y. 2013) (citing Rezulin, 309 F. Supp. 2d at 543).  Accordingly, expert testimony that is "speculative or conjectural" is inadmissible.  Id. at 289 (citing Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)).  Similarly, expert opinions that are "conclusory" must be excluded.  See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (rejecting expert's conclusory statement where it was not accompanied by "any evidentiary citation" or followed by any elaboration of the expert's reasoning).

Normally, "the use of expert testimony is not permitted if it will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)

(quoting United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991)); accord United States v. Felder, 993 F.3d 57, 74 (2d Cir.), cert. denied, 142 S. Ct. 597 (2021).  Thus, an expert report that "applies . . . legal principles to the facts" of the case is "not permitted" because it "usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court." Highland Capital Mgt., L.P. v. Schneider, 379 F. Supp. 2d 461, 470-71 (S.D.N.Y. 2005); accord Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505, 510 (2d Cir. 1977) (admission of expert testimony at trial was improper where witness "repeatedly gave his conclusions as to the legal significance of various facts adduced at trial" that were "based . . . on his examination of documents and correspondence . . . which were equally before the judge and jury" because such testimony "amounts to no more than an expression of the (witness') general belief as to how the case should be decided" (citation and internal quotation marks omitted)).

Separately, an expert is also barred from giving "testimony on issues of law." Bilzerian, 926 F.2d at 1294.  "The rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of the evidence law — a kind of axiomatic principle.'" In re Initial Pub. Offering Sec. Litig., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Thomas Baker, The Impropriety of Expert Witness Testimony on the Law, 40 U. Kan. L. Rev. 325, 352 (1992)); accord Dooley v. United States, 2021 WL 6059857, at *2 (S.D.N.Y. Dec. 22, 2021).

The "interpretation of an insurance agreement is a question of law." High Point Design, LLC v. LM Ins. Corp., 911 F.3d 89, 93 (2d Cir. 2018).  Under New York law, "insurance policies are interpreted according to general rules of contract interpretation." Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 98 (2d Cir. 2012)

III.  DISCUSSION

Goyard does not contest Comegys's qualifications or address any issues regarding reliability. Rather, the parties dispute whether the report is relevant or would "help the trier of fact" under Fed. R. Evid. 702(a). The obvious barrier to admissibility that Navigators faces is that Comegys's report is essentially a legal analysis of the Policy. The report quotes and analyzes various provisions of the Policy, explains how the provisions interrelate, and reaches the conclusion that the Policy "excludes coverage for SR&CC, while merchandise is detained, stored, displayed [sic] at the location at 20 E. 63rd Street, New York, New York." Comegys Report at 6.[2]

Comegys's analysis cannot help the finder of fact because the analysis Comegys conducts is the same analysis that a court itself would conduct in order to interpret the terms of the insurance policy. This principle was demonstrated in McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451 (9th Cir. 1999), in which the court refused to consider expert testimony to the extent it opined on "what conditions were covered or excluded under the terms of [an insurance] policy." Id. at 454; accord Travelers Indem. Co. v. Northrop Grumman Corp., 2014 WL 464769, at *5 (S.D.N.Y. Jan. 28, 2014) (precluding expert testimony as to whether a party had waived a defense, acted in bad faith, or was entitled to coverage); Am. Home Assur. Co. v. Merck & Co., 462 F. Supp. 2d 435, 448-49 (S.D.N.Y. 2006) (precluding transit insurance expert "from testifying as to his interpretation of the clauses at issue in the [transit insurance] Policy").

---

[2] The only portion that deviates from this pattern is the single statement in the report that it "is standard practice in the United States cargo insurance market . . . that coverage for Strikes, Riots and Civil Commotions is only provided while goods are in transit but not while being detained or stored at a warehouse that is named and insured under the Policy." Comegys Report at 6. This statement is not admissible inasmuch as Navigators has not shown that the purported practice of other carriers in providing such coverage is relevant to any issue in this case.

Although Navigators correctly points out that "[t]here is no law cited in the Comegys Report," Pl. Mem. at 11, the interpretation of an insurance policy is itself a "question of law," High Point Design, 911 F.3d at 93, even if Comegys did not cite to the legal principles that necessarily govern any interpretation of the provisions of an insurance policy. Navigators makes the irrelevant point that "nowhere in the Comegys Report does it provide that the specific events that took place on June 2, 2020 are expressly excluded, and nowhere therein does Mr. Comegys opine upon the happening of a riot." Pl. Mem. at 12. The problem we highlight here, however, is not that Comegys's report assumes any particular set of facts but that it conducts a legal analysis that is the province of the court.

Comegys in fact does at some points give an opinion on coverage, concluding his report by stating "[t]here is no coverage for loss or damage caused by or resulting from rioting and looting at 20 E. 63rd Street New York, New York." Comegys Report at 6; see also id. at 3 ("no claim is payable under the circumstances of this event."). These opinions are inadmissible for a host of reasons but most obviously because they run afoul of case law providing that, while "an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." Bilzerian, 926 F.2d at 1294.

The portion of Navigators' brief addressing these issues, Pl. Mem. at 10-15, cites to no case that allowed testimony remotely similar to what Comegys offers here. See, e.g., Philadelphia Indem. Ins. Co. v. Streb, Inc., 487 F. Supp. 3d 174, 182 (S.D.N.Y. 2020) (expert permitted "to explain that the meaning of the term 'aerial equipment' is distinct from 'rebound equipment,' as used within the field of gymnastics"); Bennett v. Target Corp., 2018 WL 5784354, at *8 (E.D.N.Y. Nov. 5, 2018) (permitting architect's report as to "factual assertions and conclusions founded primarily upon his experience in the retail safety and design industry,"

which "could indeed assist the trier of fact in evaluating the central issue in this case, namely, whether Target's design of either the base deck, display, or aisle in question was defective."); Ebbert v. Nassau County, 2008 WL 4443238, at *12-13 (E.D.N.Y. Sept. 26, 2008) (permitting expert to testify as to "work performed" in certain job titles and striking expert report to the extent it "appl[ied] the law to the facts").

In distinguishing Am. Home Assur. Co., 462 F. Supp. 2d 435 (cited in Def. Mem. at 6), Navigators argues that Comegys is opining on the "purpose" of certain clauses. Pl. Mem. at 13. But Comegys in fact gives no opinions on the "purpose" of any clause. More significantly, there is no explanation as to why the drafter's "purpose" is relevant to this case. Instead, Comegys's testimony resembles what was stricken in Am. Home Assur. Co.: specifically, an expert's "own version of contractual interpretation" of the insurance policy at issue. 462 F. Supp. 2d at 448. Am. Home Assur. Co. rejected the expert's claim that he was interpreting the contract as "a matter of claim adjusting practice," and held that the expert's report "clearly impinges upon the province of the Court." Id.

Navigators attempts to distinguish Travelers, 2014 WL 464769, on the ground that, although the report in Travelers impermissibly opined on questions of law, "the Comegys Report offers opinion and subjective theories regarding the Navigators Policy." Pl. Mem. at 13-14. However, we do not see any relevant difference between Comegys opining on the meaning of various provisions, along with his ultimate conclusion that losses caused by rioting are not covered under the Policy, and the expert report in Travelers, which concluded that the insured was "entitled to coverage" for "unintended property damage caused by intentional acts." 2014 WL 464769, at *5-6. Additionally, although Navigators attempts to distinguish some cases on the basis that "none of those cases involve marine insurance cargo policies," see Pl. Mem. at 13,

this distinction is irrelevant to the larger principle at issue: that an expert may not offer his or her interpretation of a contract.

IV. CONCLUSION

For the foregoing reasons, Goyard's motion to strike the expert report of Robert V. Comegys (Docket # 69) is granted.

SO ORDERED.

Dated: June 21, 2022
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge